## In re FRANCISCO COAL, Inc.

## BINKLEY COAL. CO. v. HENDERSON et al.

No. 4731.

Circuit Court of Appeals, Seventh Circuit.
June 30, 1932.

Rehearing Denied Oct. 3, 1932.

Henry Adamson, Russell Blair, and James H. Adamson, all of Terre Haute, Ind., for appellant.

Morton C. Embree and Charles O. Baltzell, both of Princeton, Ind., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

The error relied upon arises out of the allowance of appellant's claim as a general one, and the rejection of its priority over a mortgage of the First National Bank of Vincennes, Ind., as trustee, which is referred to hereinafter as the bank.

The facts are uncontroverted and substantially are as follows: Bankrupt, on April 1, 1930, which was prior to the institution of its bankruptcy proceedings, executed its trust deed or mortgage to the bank to secure the payment of certain bonds in the principal sum of $575,000, which were issued and outstanding at the time the petition in bankruptcy was filed.

On April 15, 1930, bankrupt entered into an agreement with appellant by which appellant was given the exclusive right and privilege to sell all coal mined by bankrupt from its mine from April 15, 1930, to April 15, 1931, which contract was in force from its inception to the adjudication in bankruptcy.

On January 2, 1931, appellant executed and delivered to the bank a written guaranty of all bankrupt's pay rolls so long as bankrupt operated its mine and the coal therein mined was shipped to the order of appellant.

On February 2, 1931, a receiver for bankrupt was appointed by a state court of Indiana, and at that time bankrupt had become indebted to its employees for wages in the sum of $12,825.68, which was for labor performed in mining said coal for the account of appellant from January 16, 1931, to January 31, 1931, inclusive.

On February 7, 1931, the receiver, by order of the said Indiana court, demanded of appellant that it pay, under the terms of its guaranty, the past-due wages above referred to, which on February 9, 1931, it did accordingly pay to said individual miners in the amount above stated, and credited the amount so paid on prior indebtedness of bankrupt to appellant; and this left a balance due appellant from bankrupt of $60,000.

No assignment of the wages so paid was ever made by the miners receiving the pay, nor did any of said miners ever file with the county recorder of Gibson county, Ind., wherein said coal mine was situate and said work was done, any written notice of their intention to hold a lien on bankrupt's property for their respective claims.

Petition to have Francisco Coal, Inc., declared an involuntary bankrupt was filed February 3, 1931, and it was so adjudicated on April 3, 1931.

The only question presented is whether, under the statement of facts, the court erred in holding that appellant had no lien prior to the mortgage claimant for the amount paid by it under its guaranty to pay the miners' wages. Appellant contends that it is entitled to such lien by virtue of the Indiana Mechanics' Lien Law, Indiana Stat. (Burns' 1926), vol. 3, § 9831, and also by virtue of section 20, Acts 1923 (Ind.), p. 487, c. 177, relative to the operation of coal mines. Ind. Burns' Ann. St. vol. 3, § 10074.

So much of the Indiana Mechanics' Lien Law as is pertinent to this discussion is as follows: " * * * all claims for wages for mechanics and laborers, employed in or about any shop, mill, wareroom, storeroom, manufactory or structure, bridge, reservoir, system of water-works or other structure, sidewalk, walk, stile, well, drain, drainage ditch or cistern, shall be a lien on all the machinery, tools, stock of material, work, finished or unfinished, located in or about such shop, mill, wareroom, storeroom, manufactory or other building, bridge, reservoir, system of water-works, or other structure, sidewalk, walk, stile, well, drain, drainage ditch, sewer or cistern, or used in the business thereof; and should the person, firm, or corporation be in failing circumstances, the above mentioned claims shall be preferred debts, whether claim or notice of lien has been filed or not."

It will be observed that miners are not included in this section unless it be by inferential interpretation. To so interpret it would be going further, we think, than the statute warrants, and quite beyond the legislative intent. The Mechanics' Lien Law of Indiana is an enactment of long standing. Originally the classes of mechanics and laborers protected thereby were very much limited in number as compared to the classes now protected. From time to time the range of beneficiaries has been extended by amendments, and in none of them has there been any apparent effort to include miners' wages, and we are convinced that the Legislature never intended to include them. We are confirmed in this belief by the fact that while this law was in force section 20 of the act relating to the operation of coal mines, and providing for miners' liens for wages as above referred to, was enacted.

It is true that in Haskell v. Gallagher, 20 Ind. App. 224, 50 N. E. 485, 67 Am. St. Rep. 250, it was held that under the Indiana Mechanics' Lien Law a lien may be acquired on an oil well for labor performed and fuel furnished in drilling such well. We think the facts in that case, however, are not analogous to the instant facts, and at that time there was no other statute protecting such laborers as there is in the instant case, from which the legislative intent is so manifestly apparent. So much of section 20 of the miners' act above referred to upon which appellant relies is as follows:

"(A) The miners and other persons employed and working in and about the mines, and others interested in the rental or royalty on the coal mined therein, shall have a lien on said mine and all machinery and fixtures connected therewith, and everything used in and about the mine, for work and labor performed within two months, and for royalty on the coal mined for any length of time not exceeding two months; and such liens shall be paramount to, and have priority over all other liens, except the liens of the state taxes; and such liens shall have priority, as against each other, in the order in which they accrued, and for labor over that for royalty on coal.

"(B) Any person to acquire such liens shall file in the recorder's office of the county where the mine is situated, within sixty days from the time the payment became due, a notice of his intention to hold a lien upon such property for the amount of his claim, stating in such notice the amount of his claim, and the name of the coal works, if known, or any other designation describing the location of said mine; and the recorder shall record the said notice, when presented, in a book used for recording mechanics' liens, for which the recorder shall receive a fee of twenty-five cents."

It is appellant's contention that the lien is created by clause A separate and apart from the clauses which follow it. With this contention we cannot agree. Clause B is more than a method of procedure to enforce the lien after its acquirement. It states specifically that in order to acquire the lien claimant shall file the notice in the recorder's office. In other words, clause A says he shall have the lien if he wants it, and clause B says if he wants it he shall file his notice.

No notice having been filed by any of the workmen, there was no lien on the property in controversy securing the wages which appellant paid, and hence it has no lien thereon.

Judgment affirmed.